IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

| | | |
|---|---|---|
| **JOSEPH R. KARSNER, IV,** | * | |
| Petitioner, | * | |
| | | Civil Action No.: 07-cv-507 (RCL) |
| v. | * | |
| **JOHN CATALANO** and **THE NATIONAL ASSOCIATION OF SECURITIES DEALERS,** | * * | |
| Respondents. | * | |

* * * * * * * * * * * * * *

**RESPONSE TO PETITIONER'S OPPOSITION TO
MARYLAND SECURITIES COMMISSIONER'S
MOTION TO INTERVENE**

The Maryland Securities Commissioner, Melanie Senter Lubin, by and through undersigned counsel, hereby submits this response to Petitioner's Opposition to Maryland Securities Commissioner's Motion to Intervene.[1] As reasons for this request, the Securities Commissioner states:

**Procedural Background**

1. In March 2007, Petitioner initiated this proceeding by filing a petition to confirm a stipulated arbitration award entered in or about March 2006, naming as Respondents John Catalano, the complainant in the arbitration proceeding, and the National Association of

---

[1] The New York Attorney General's motion to intervene for purposes of opposing a request for expungement of CRD records was recently granted by the State of New York Supreme Court, County of Erie, in the matter of Parker et al. v. Salzberg et al., Case No. I-2007-01942.

Securities Dealers ("NASD").[2]

2.  On or about March 30, 2007, the Securities Commissioner filed a Motion to Intervene in this case for the limited purposes of opposing the portion of the arbitration panel's award *recommending* expungement of the arbitration from Petitioner's registration and disciplinary records.

3.  On April 11, 2007, Petitioner filed its opposition to the Securities Commissioner's Motion to Intervene ("Opposition Brief") setting forth three grounds for opposing the Securities Commissioner's Motion:

   a.  The motion to intervene is futile in that the Securities Commissioner's Motion in Opposition to Confirmation of the Arbitration Award ("Opposition Motion") is barred by the statute of limitations under §12 of the Federal Arbitration Act ("FAA").  9 U.S.C. §12.

   b.  The motion to intervene is futile in that the Securities Commissioner's Opposition Motion does not adequately allege grounds for judicial review of an arbitration award.

   c.  The motion to intervene was untimely filed.

**Arguments Responsive to Petitioner's Opposition Brief**

**I.   The FAA is not controlling in the Court's review of the arbitration's panel <u>recommendation</u> of expungement.**

Petitioner's argument that the Securities Commissioner's Motion to Intervene should be

---

[2] The stipulated award presented to the arbitration panel was the result of a negotiated settlement between the complainant and Petitioner whereby, in connection with a payment of $15,000 to the complainant, the complainant recanted the allegations set forth in her statement of claim.

denied because her Opposition Motion is barred by the statute of limitations presupposes that the FAA governs the Court's review of the arbitration panel's recommendation of expungement. However, the Court's review is not controlled by the FAA.

The arbitration panel's award consists of two forms of relief: (a) the panel, based upon the confidential settlement agreement reached by the parties, dismissed with prejudice all claims against Respondent; and (b) the panel "recommended" the expungement of all reference to the arbitration from Petitioner's CRD record. The former represents a final order or award binding upon all parties to the arbitration. The latter is merely a <u>recommendation</u> and not a final order or award of expungement in any way binding on the parties or the Court.[3]

The arbitration panel's recommendation should not be treated as the equivalent of an award of expungement. If the arbitration panel intended to award expungement of records, it very well could have done so by explicitly ordering or awarding expungement of the arbitration from Petitioner's CRD records.[4] The mere <u>recommendation</u> of expungement does not qualify as a final award under the FAA and, therefore, is not ripe for confirmation under §9 of the FAA. By recommending, rather than awarding, expungement of the arbitration from Petitioner's records, the arbitration panel deferred to the Court's determination of whether expungement is

---

[3] Specifically, the stipulated award stated that "[t]he Panel <u>recommends</u> the expungement of all reference to the above-captioned arbitration from Respondent Karsner's registration records maintained by the NASD Central Registration Depository. . .".

[4] In describing the circumstances under which the NASD will expunge customer dispute information from the CRD system under NASD Rule 2130, the NASD in Notice to Members 04-16 states the following: "If the parties settle the arbitration, they may jointly ask the arbitration panel for a stipulated award and request that the panel make affirmative findings and <u>order</u> expungement based on one or more of the standards in Rule 2130." The arbitration panel in this case did not "order" expungement but simply "recommended" expungement.

appropriate in this case. Consequently, the Securities Commissioner is not seeking either to confirm or modify a final award, but to oppose a request for expungement recommended by the arbitration panel.

The language of the FAA makes it clear that the statute is not intended to apply to the circumstances here. §§9 - 11 of the FAA explicitly refer to the <u>parties</u> to the arbitration proceeding and the <u>parties'</u> right to seek judicial confirmation, vacation or modification of an arbitration award.[5] In the context of these sections, the references to "adverse party" in §12 of the FAA strongly implies that it applies only to parties to the underlying arbitration proceeding.[6]

Further, the 90-day statute of limitations under §12 of the FAA should not apply in this situation where the Securities Commissioner was not a party to the underlying arbitration, and

---

[5]    §9 of the FAA, in part, provides:

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . <u>any party to the arbitration</u> may apply to the court so specified for an order confirming the award." 9 U.S.C. §9.

§10 of the FAA, in part, provides:

"In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of <u>any party to the arbitration</u>– . . ." 9 U.S.C. §10.

§11 of the FAA, in part, provides:

"In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of <u>any party to the arbitration</u>– . . ."

[6]    §12 of the FAA, in part, provides:

"Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

the petition to confirm the arbitration panel's recommendation of expungement was filed more than 90 days after the award was entered.[7]  Because she was not a party to the underlying arbitration proceeding, the Securities Commissioner did not know, and had no reason to know, of the arbitration panel's expungement recommendation until Petitioner filed this proceeding, nearly a year after the recommendation was entered.  Simply put, the Securities Commissioner was not put on notice that her property rights to Petitioner's CRD records were at risk of being detrimentally affected and, thus, could not have intervened within the 90-day time period applicable to parties to the arbitration.  §12 of the FAA should not be interpreted in such a way that it denies to non-parties the right to protect their interests under these circumstances.

The Securities Commissioner seeks to intervene to set forth the reasons why expungement is not appropriate.

**II.    If the Court determines that the FAA governs its review of the arbitration panel's recommendation of expungement, the Securities Commissioner sufficiently set forth the appropriate grounds for judicial review.**

Even if the Court determines that the FAA is controlling, the Securities Commissioner sufficiently set forth a non-statutory ground for opposing the confirmation of the arbitrators' recommendation of expungement, and therefore the statute of limitations set forth under §12 of the FAA is inapplicable.  *See* 94 AMJUR TRIALS 211 §30, Non-statutory vacatur or clarification. ("A party may challenge an arbitration award under a contract that is subject to the FAA and may base vacatur on common law or other judicial-recognized bases.  These include an attack on an award for such reasons as the award is irrational, arbitrary and capricious; or is in

---

[7]  The arbitration panel's award was entered in or about February 2006.  Petitioner initiated this proceeding to confirm the arbitration panel's award on February 12, 2007.

manifest disregard of the law; or the relief contravenes public policy; or there is no contract to arbitrate. These are all challenges that do not rely on the FAA and, thus, are not bound by the FAA limitations period.")

As the Petitioner pointed out in his Opposition Brief, judicial review is limited to consideration of: (a) the enumerated reasons in the FAA, 9 U.S.C. §10; (b) when the award is contrary to some explicit, well-defined, and dominant public policy; (c) and when the award is "in manifest disregard of the law." *Sapiro v. Verisign*, 310 F. Supp. 2d 208, 215 (D.D.C. 2004).

The Petitioner is correct that the Securities Commissioner does not assert as a basis for judicial review any of the statutory grounds under §10(a) of the FAA because those grounds can be raised only "upon the application of any party to the arbitration." 9 U.S.C. §10.

The Securities Commissioner has already established, in her motions to intervene and to oppose petitioner's request for confirmation of arbitration award, that the relief requested by Petitioner is contrary to an explicit, well-defined, and dominant public policy.

The Securities Commissioner has previously described how Petitioner's use of the expungement process undermines the purpose of maintaining accurate and complete CRD records. Petitioner has 32 customer complaints and/or arbitrations on his CRD record. The majority of those complaints and/or arbitrations have been settled with a total payout to investors of approximately $1.1 million. Petitioner is now engaged in a systematic scheme to expunge those records from his CRD record by entering into negotiated settlements with complainants whereby Petitioner agrees to pay compensation to the complainants in exchange for the complainants' agreement to a stipulated award recommending expungement of the underlying facts of the complaint and/or arbitration. Petitioner already has filed petitions with this Court to

confirm three such requests for expungement and, upon information and belief, is in the process of seeking expungements for a significant number of other complaints and/or arbitrations. Petitioner should not be allowed to cleanse his record by simply making payments to complainants.

In fact, in its Notice to Members 04-43 issued in June 2004, the NASD recognized that the expungement process was being abused, and cautioned its members and associated persons against entering into bargained-for settlements involving the submission by a complainant of an affidavit absolving the respondent of any alleged wrongdoing:

> NASD has recently become aware of instances in which claimants and respondents appear to be settling customer claims for monetary compensation to the claimant in return (at least in part) for a customer affidavit that absolves one or more of respondents of responsibility for any alleged wrongdoing. These affidavits, attested to in connection with settlements that often are incorporated into stipulated awards, appear to be inconsistent on their face with the initial claim and terms of the settlement.
>
> NASD cautions its members and their associated persons that when they submit affidavits in which the content is the product of a bargained-for consideration as opposed to the truth, members and/or their associated persons subject themselves to a panoply of applicable sanctions, including possible disciplinary action for violation of NASD Rules, including Rule 2110, and other penalties, including possible criminal sanctions.

NASD NTM 04-43 (June 2004).

Additionally, the fundamental purpose behind federal and state securities acts, including the Maryland Securities Act, is investor protection. *See* SEC v. Life Partners, Inc., 87 F.3d 536, 550, pet. for reh. denied, 102 F.3d 587 (D.C. Cir. 1996) (Wahl, J., dissenting) ("The Court has remarked that 'the design of the[se] statute[s] is to protect investors . . .' "); *see also,* Gilbert v. Meason, 137 Ga.App. 1, 3 (Ga. Ct. App. 1975) ("State security laws are expression by General

Assembly of statutory policy affording broad protection to investors . . ."). In fact, the Securities Commissioner is statutorily obligated to carry out her duties with a primary objective of investor protection. *See* Md. Code Ann., Corps. and Ass'ns., §11-203 (requires the Securities Commissioner to adopt only those rules that are necessary or appropriate in the public interest or for the protection of investors.).

An important tool in carrying out the Securities Commissioner's investor protection responsibilities is the record-keeping maintained on CRD to ensure that the investing public has access to information that is material to its selection of securities professionals handling its investment funds. *See* SEC v. Life Partners, Inc., 87 F.3d 536, 550 (Wahl, J., dissenting) (The third and final principle is that the securities laws, and in particular the Securities Act of 1933 and the Securities Exchange Act of 1934 which are the statutes at issue here, embody the belief that information is the most important form of investor protection. The Court has remarked that 'the design of the[se] statute[s] is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions,' and it has used this concern for ensuring adequate access to information to guide its application of the Acts."); *see also,* Capital Gains Research Bureau, 375 U.S. 180, at 186 (S.Ct. 1963) ("[a] fundamental purpose, common to [the securities laws], was to substitute a philosophy of full disclosure for the philosophy of caveat emptor"). That information includes the disciplinary history of those professionals. The same information is used by the Securities Commissioner in her decision of whether to deny the application of, or revoke the license of, a securities professional based upon her determination that the professional's actions pose a harm to the investing public.

The expungement of the facts of the arbitration from Petitioner's CRD records, as well as

the other arbitrations that Petitioner is attempting to expunge, will have a detrimental effect on the investor protection public policy behind the Maryland Securities Act.

**III.    The Securities Commissioner's Motion to Intervene is timely.**

Petitioner's argument that the Securities Commissioner's Motion to Intervene is untimely rests primarily on the assertion that the motion to intervene is futile, because the underlying Opposition Motion is barred by the statute of limitations and fails to raise a recognized ground for judicial review. For the reasons set forth above, however, the Opposition Motion is not barred by the statute of limitations and the Securities Commissioner has sufficiently asserted a legitimate non-statutory basis for judicial review; therefore, Petitioner's argument for untimeliness fails.

Petitioner also argues that the Securities Commissioner has made a bare assertion that she has a property interest in records maintained by the NASD that the arbitration award recommends be expunged, and that she has not demonstrated that she meets the Rule 24 requirement that her claimed interest will be affected by the action.

The Securities Commissioner has demonstrated both her property interests in Petitioner's CRD records and the manner in which her interests will be impaired by the Court's grant of expungement.

In her Motion to Intervene, the Securities Commissioner established that her property interest in the CRD records of Petitioner originates from two sources: the Maryland Securities Act and the contract entered into between NASAA, on behalf of the state jurisdictions, and the NASD.

Although the State of Maryland is not a party to the contract between NASAA and the

NASD, it is a third party beneficiary and, as such, its property rights to the information contained in the CRD system has been recognized under the NASAA/NASD contract:

> The data on CRD Uniform Forms filed with the CRD shall be deemed to have been filed with each CRD State in which the applicant seeks to be licensed and with the NASD and shall be the joint property of the applicant, NASD, and those CRD States (and, in the case of Forms BD and BDW, the Securities and Exchange Commission). The compilation constituting the CRD database as a whole shall be the property of NASD.[8]

*See* Paragraph 3(e) of the CRD Agreement Amendment, dated December 13, 1996, attached as Exhibit 2.

The Securities Commissioner also demonstrated that her property interests in Petitioner's CRD records are statutorily based. Under Maryland law, prior to conducting securities business in Maryland, an individual is required to register with the Maryland Securities Division as an agent by filing a Form U4 through the CRD system. *Id.*, §§11-401 and 11-405. The information contained in an individual applicant's Form U4, which includes customer complaints and arbitrations, is used by the Securities Commissioner in deciding whether to register that individual to transact business in Maryland. If that individual's agent registration is approved, that individual is under a continuing obligation to keep current the information contained on the individual's Form U4. §11-411.

Under Maryland's public records laws, the Securities Commissioner, as the principal executive of the Maryland Securities Division, is the "official custodian" of the Securities Division's records and, as such, is responsible for keeping the records of the Division and for

---

[8] A "CRD State" is defined at section 2.07 of the CRD Agreement as a U.S. state, territory or possession, or the District of Columbia or Puerto Rico, or Mexico, or a province or territory of Canada that elects to implement its Licensing function through the CRD. . ." *See* pages 1 and 4 of CRD Agreement, dated January 1993, attached as Exhibit 1.

making those records available to the general public. Md. Code Ann., State Gov't, §§ 10-611 and 10-612; Md. Code Ann., Corps. and Ass'ns, §11-201. Those records include the information contained in Petitioner's CRD records.

The Securities Commissioner has sufficiently established that her property interests in Petitioner's CRD records will be adversely affected without her input if she is not allowed to intervene in the case. The Securities Commissioner was not a party to the underlying arbitration and was not able to protect her property interests in Petitioner's CRD records at the arbitration level. Yet the parties to the arbitration through their stipulated award, and the arbitrators through their recommendation of expungement, are attempting to detrimentally affect the Securities Commissioner's interests in those records that are required by law to be maintained by the Securities Commissioner.

WHEREFORE, the Securities Commissioner requests that the Court grant her motion to intervene. Alternatively, the Securities Commissioner requests that a hearing be scheduled in this matter.

Respectfully submitted,

DOUGLAS F. GANSLER
ATTORNEY GENERAL of MARYLAND


_____/s/_____
Kelvin M. Blake
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-7783

            /s/
          Lucy A. Cardwell
          Assistant Attorney General
          Division of Securities
          200 St. Paul Place, 25th Floor
          Baltimore, MD 21202
          410/576-6337

April 20, 2007

CERTIFICATE OF SERVICE

I hereby certify that I have this day, April 20, 2007, served the foregoing Response to Petitioner's Opposition to Maryland Securities Commissioner's Motion to Intervene by U.S. mail, first-class postage prepaid, to:

Richard Magid
Whiteford, Taylor & Preston
7 Saint Paul Street
Baltimore, MD 21202

and

George S. Mahaffey, Jr.
Goodell, DeVries, Leech & Dann, LLP
One South St., 20th Floor
Baltimore, MD 21202
*Counsel for Petitioner Joseph Karsner*


Karen Weinstein
NASD Registration and Disclosure Department
2nd Floor
9509 Key West Ave.
Rockville, MD 20850
*Counsel for NASD, Respondent*


William B. Young, Jr.
Colling, Gilbert, Wright & Carter
2301 Maitland Center Parkway, Suite 240
Maitland, FL 32751
*Counsel for Lawrence Simpson, Respondent*


                                                      /s/
                                            Kelvin M. Blake

CRD AGREEMENT

THIS AGREEMENT is made and entered into as of the second day of January, 1993, by and between the National Association of Securities Dealers, Inc. ("NASD"), 1735 K Street, N.W., Washington, D.C. 20006, and the North American Securities Administrators Association, Inc. ("NASAA"), One Massachusetts Avenue, N.W., Washington, D.C. 20001.

WITNESSETH:

**WHEREAS,** state securities regulators have the regulatory authority under the laws of the United States and the state governments to license Broker-dealers, Agents and other securities professionals who operate within or from their jurisdictions; and

**WHEREAS,** NASAA and NASD (the "parties") entered into an agreement to create the Central Registration Depository (the "CRD"), which began operations in 1981, for the purpose of converting multiple paper-based Licensing and regulatory processes onto a single national computer system that facilitates state, self-regulatory organization and federal regulation of securities professionals (the "1980 Agreement"); and

**WHEREAS,** the parties wish to restate and replace that 1980 Agreement, as amended from time to time, with a new agreement to reflect the new relationship between the parties and the redevelopment of the CRD as specified in this agreement together with all Exhibits to be agreed upon by the parties and attached hereto and incorporated herein (the "CRD Agreement"); and

**WHEREAS,** through the development of the CRD, the parties have established a facility for the timely collection of Licensing fees required to be paid to state governments for the Licensing of Broker-dealers, Agents and other securities professionals and established a process to account for and distribute state Licensing fees to each participating government agency; and

**WHEREAS,** the parties acknowledge that, by virtue of the process established by the CRD for the sharing of Licensing information and the collection of Licensing fees to be paid to the state governments and the proper accounting for and distribution of those fees, state governments are third party beneficiaries of this CRD Agreement; and

**WHEREAS,** the parties are committed to the establishment of uniform procedures, definitions, and interpretations through cooperative efforts to promote observance of federal and

**Exhibit 1**

4

investment adviser or investment adviser representative license, at such time, if any, when investment advisers and/or investment adviser representatives are included on the CRD.

2.04    *CRD Access Configuration (or CAC)* means the computer processors, software, firmware, leased lines facilities, network access ports, network routing facilities and such other data communications equipment as may be installed and maintained by the NASD for the purpose of connecting CRD Workstations and Printers to the central CRD system. The CAC permits connected CRD Workstations to transmit CRD transactions and receive responses and disseminated data and report files from the central CRD system.

2.05    *CRD Data* means the data filed with and maintained by CRD.

2.06    *CRD Printer* means an output device used by state staff to print out central CRD system-generated activity reports, rosters and database query responses. CRD printers are connected to the central CRD system via the CAC.

2.07    *CRD State* means any of the states of the United States, the District of Columbia, Puerto Rico and any of the United States territories and possessions, Mexico, and any of the provinces and territories of Canada that elects to implement its Licensing function through the CRD, provided that access to the central CRD system and software and hardware maintenance can be made available at reasonable cost, as determined by the parties, and is permissible pursuant to applicable government regulations.

2.08    *CRD Workstation* means a computer display device used by state staff to interactively access the central CRD system application. CRD workstations are connected to the central CRD system via the CAC.

CRD AGREEMENT AMENDMENT

THIS AMENDMENT is made and entered into as of the _13th_ day of _December_ 1996, by and between the National Association of Securities Dealers, Inc. ("NASD"), 1735 K Street, N.W., Washington, D.C. 20006, and the North American Securities Administrators Association, Inc. ("NASAA"), One Massachusetts Avenue, N.W., Washington, D.C. 20001.

In consideration of the mutual promises of the parties, and the mutual agreements, covenants, and conditions hereinafter contained, it is hereby agreed as follows:

1. The CRD Agreement entered into as of the second day of January, 1993, which terminated June 30, 1994, is hereby reinstated as of June 30, 1994, in all respects.

2. The Initial Exhibits described at *Section 2.12* of the Agreement, and attached to this Amendment, are hereby accepted by the parties.

3. The Agreement is further amended as follows:

    a. The text of Section 2.04 is amended by the addition of the following sentence:

    Initial CAC specifications and material changes to CAC specifications shall be approved by the Steering Committee.

    b. The following two sentences are added to Section 2.11:

    In the event of any conflict among the Exhibits between any two statements, the more specific statement shall prevail. Any disagreement in identifying the more specific statement shall be resolved by the Steering Committee.

    c. The text of Section 2.16 is amended to replace the word "Kansas" with the words "Washington, D.C."

    d. The text of Section 3.05(b) is deleted in its entirety and replaced by the following:

    The Steering Committee shall comprise persons appointed by NASAA and by NASD. Each party may name designees of the appointed persons. Each party shall designate one Steering Committee member as the party's delegate, who will, in voting matters, cast that party's vote.

    e. The text of Section 3.10 (a) is deleted in its entirety and replaced by the following:

**Exhibit 2**

The data on CRD Uniform Forms filed with the CRD shall be deemed to have been filed with each CRD State in which the applicant seeks to be licensed and with the NASD and shall be the joint property of the applicant, NASD, and those CRD States (and, in the case of Forms BD and BDW, the Securities and Exchange Commission). The compilation constituting the CRD database as a whole shall be the property of NASD.

f. The first sentence of Section 3.10(b) is deleted in its entirety and replaced by the following:

With the exception of paper forms sent to NASD for processing through the NASD's Internal Processing or Emergency Services Units, NASD shall maintain the original of any form not required to be filed electronically for a minimum of three (3) years from the date of filing.

g. The second sentence of Section 3.14 is deleted in its entirety. The last sentence of the Section is deleted in its entirety and replaced by the following:

The Steering Committee shall approve all applications for substitute CACs and CAC attachments. NASD shall have sole authority for giving operational approval, which will not be withheld unreasonably.

h. A new section 3.17 is added as follows:

NASD shall provide to NASAA access to CRD documentation related to this Agreement, provided reasonable advance notice has been given.

4. In the event of a conflict between any term of the CRD Agreement and any term in this Amendment, the term in this Amendment shall prevail.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed by their duly authorized representatives.

| NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. | NORTH AMERICAN SECURITIES ADMINISTRATORS ASSOCIATION, INC. |
|---|---|
| BY: _[signature]_ (signature) | BY: _[signature]_ (signature) |
| NAME: Frank J Formica (print or type) | NAME: MARK GRIFFIN (print or type) |
| TITLE: Vice-President (print or type) | TITLE: President & Chair (print or type) |
| DATE: 12/18/96 | DATE: 12/13/96 |

NASD OGC
NAME: Rose
DATE: 12/10/96